Thank you Mr. Chief Justice and may it please the Court. This case turns on the meaning of the word during. Under the Differential Pay Statute, the government must provide differential pay to its civilian employees who also serve in the Reserves when they are called to active duty under a provision of law referred to in Section 101A.13.B. of the U.S. Constitution. Section 101A.13.B. refers, among other provisions, to any provision of law during a war or declared national emergency. Thus, during a national emergency, reservists called to active duty under any provision of law must receive differential pay. The government resists this common sense temporal definition of during, the same definition it argued for in Rassam. Instead, the government says during here means, quote, in the course of, end quote. And in the course of, it says, requires a substantive connection between a reservist's military service and a pending national emergency. That is wrong for at least three reasons. First, it conflicts with the ordinary and conventional meaning of the word during, which is virtually always purely temporal. Second, it doesn't work in the statutory scheme, which asks only whether a reservist has been called to active duty under a provision of law referred to in Section 101A.13.B. Something that doesn't depend on the reasons the reservist was called to active duty. Third, it would create an impossible line drawing problem to figure out what it means to have a sufficiently substantive connection to qualify for differential pay. Not just for courts, not just for agencies, but for private employers who will face criminal penalties under 18 U.S.C. Section 209 if they get the question wrong. The government has yet to offer any theory for how to assess whether a reservist's service is in the course of a national emergency, other than saying courts should defer to the government's own characterization in a reservist's orders. There are more reasons the government's interpretation is wrong and ours is right, but I see that I am out of time. I welcome the court's questions. How do you respond to the government's argument that your approach would be very disruptive in the other sections of Title X that use the term contingency operation? Your Honor, this case doesn't actually turn on the definition of contingency operation. Congress picked up a part of the definition of contingency operation and used it as a reference for the differential pay statute. But we think that the court's ruling in this case wouldn't alter the meaning of the word contingency operation in Title X in any manner. Moreover, I'll point out Mr. Feliciano was called to active duty under Section 12302 orders to do the exact same duties that he had performed under his 12301D orders. The 12302 orders are enumerated in the statute, meaning that under the government's theory, he was already participating in a contingency operation, according to them, when he was called under 12302. But the government hasn't pointed out that he was, and I don't think that they think that he was, because there are other separate limits on what it means to be a contingency operation. It must be a military operation, and it must result in a call to active duty under a provision of law. Has your approach ever been the prevailing approach? So, Your Honor, we have canvassed all courts that we can, and essentially this has not been litigated, as far as we can tell, in the courts. The MSPB judges have consistently sided with us until the Adams opinion. There were a couple of outliers. And we think that in the O'Farrell decision, which predates the Adams decision that is the adverse precedent in the Federal Circuit, there was a suggestion in that case that a contingency operation has to be a military operation that puts American soldiers at a risk of armed conflict. That the military operation part of the definition is doing a lot of the work in the contingency operation definition. We think you don't have to reach any of that in this case because of the way that the differential pay statute uses 101A13B. What it says is you are entitled to differential pay if you are called to active duty under a provision referred to in 101A13B. And it's the conventional common sense reading of what it means to be referred to in that provision that provides the trigger for differential pay. During a national emergency, any provision of law is referred to. Because it says any other provision of law during a war or during a national emergency declared by the President of Congress. Isn't the practical effect then of your reading that every reservist gets differential pay who is called up? Yes, who is called to active duty. And I guess what I'm confused about is why Congress would have so carefully amended the statute over time to add new people, etc., if the right reading was just if you're called up, you get it. Your Honor, shortly after the statute was enacted in 2009, the Office of Personnel Management issued guidance that said that anyone called up under the residual provision, any other provision of law provision, could never receive differential pay. So if it wasn't enumerated in the statute, you couldn't get differential pay at all. So Congress had a strong incentive to ensure that new provisions were added to the enumerated list. But if you're right, wouldn't the amendment be, no, everyone who's called up gets it? That's not how the statute reads in terms of either what Congress did in the successive amendments or how it reads right now. The way we look at this statute is as very much a preacher of Congress and how Congress actually works. So the issue is that there were the votes to enact the original differential pay statute. It took almost 10 years to enact that statute. It's a lot easier to add a new enumerated provision to 101A13B than it is to overrule OPM's guidance on this issue. So the way that we think about it is that probably a member of Congress had a constituent who said, I actually was serving on compulsory orders and I didn't get differential pay. And the member of Congress said, well, we'll get that fixed. A lot of these statutes were enacted as part of omnibus appropriations bills. So Congress has seen this as something where people can get this amended and changed. And it's easier to do something small than it is to do something big in Congress. And it's easier to add a new provision to just make sure that your constituent gets differential pay. I'm sorry. Go ahead. If that were the case, why didn't the various provisions that were rejected and proposed to Congress to just say differential pay for anybody called up? And there were quite a few of those that were rejected. Instead, Congress crafted a very careful limitation. Your Honor, let me give you three reasons that we think Congress wrote the statute this way and not by simply providing differential pay to all reservists. First, they're not the same. You're not denying there were proposals to do that? There were proposals to do that. And those were rejected? I don't want to say that they were rejected. I want to say they were not enacted. The text was changed to this text. And the reason why I make that distinction is that I think there were members of Congress who supported this language because they knew it would function exactly this way. I think there may have been other members of Congress who are more optimistic about the ability of the Congress and the President to actually end existing national emergencies and might see this as a real limitation, as something that is actually capable of constraining the availability of differential pay. When was the last time there was not a declared national emergency? My understanding is that the National Emergencies Act ended all pending national emergencies in 1976. So when Congress saw that there were four pending national emergencies, they thought that this was far too many and that national emergencies had gotten out of hand. Since 1979, there's been one in effect. Sorry to interrupt. Yes, Your Honor. There was a national emergency declared with respect to Iranian sanctions. And that's been renewed by the President routinely, and it's been in effect since 1979, I believe. Yes, Your Honor. And I think that that's crucial. Every single year, these national emergencies are revisited by the President and renewed. This is not like there's been one national emergency and it's been sitting out there. The President revisits it, looks at whether the basis for the national emergency continues, and then re-declares the national emergency. How does that help your argument? Because it means that national emergencies are actually national emergencies. So, I mean, if we focus on the differential pay statute, it says during a war or during a national emergency. And it is completely legitimate to believe that Congress thought that national emergencies are actually national and actually emergencies. That they are all-of-nation efforts. They don't want to create line-drawing problems where you have to try to figure out whether back-filling for an active-duty service member who goes overseas constitutes a connection or whether being called to training that will ultimately result in your potential deployment in a contingency operation counts. They wanted a clean, bright-line rule. Everyone contributes during a national emergency. Your thinking is that Congress said, well, you know, we realize that there have been national emergencies now for decades and decades and decades. But if we look ahead, we foresee the time when there will be peace throughout the world and nothing threatening. And the lion or the wolf is going to lie down with the lamb and there isn't going to be a national emergency. So that's why we've put in, what is it, eight specific provisions that would be superfluous if your interpretation were accepted. Two responses to that. On the superfluidity argument, this is not superfluidity as we understand it typically in the law. Those provisions are not superfluous because if all national emergencies end, they will be the only basis for differential pay. So this is kind of a quasi-superfluidity argument by the government that's more based on hypotheses about what Congress believes and what Congress knows about the real world. And so it calls on the court to try and figure out whether Congress really believed that they were going to end all pending national emergencies or not, which is just different than traditional textual superfluidity. But to that point, really, what does Congress believe? There are 43 national emergencies now. Every time we have a sanctions program in place, we declare a national emergency. I mean, this is just a sort of feature of modern life. There are politicians who go on morning news programs and say, we are going to end the authorization for the use of military force, that we are going to end. They don't necessarily say pending national emergencies, but I think that that's a fair implication. We are always one election away from ending all pending national emergencies. They could change the way... We're not going to have any sanctions programs. We're not going to have any hurricanes. I mean, it just seems like a world which couldn't possibly exist. I also want to point out, and I think this is crucial, the legislative history, and this goes to the legislative language change, it's always been sold. The language of this statute, this statute has always been put forward as if it applied to all reservists. In other words, although this triggering condition may not have an end in sight, I mean, I want to emphasize that this triggering condition is something Congress does control. So it's not like they said, you know, when man again walks on the moon, something they can't control. They can control when all national emergencies end or not. So they're actually sitting in the driver's seat of the scope of this statute. But this was always sold as all reservists. After the language changed, it was still presented on the exact same terms. Well, I thought you said something completely different just a minute ago, which it was sold. It was actually your theory, which I want to explore, of how Congress operates, that some members kind of sneakily thought just listing the particular provisions would cover the waterfront and deceive to the other members. And I have no doubt that happens. That does happen. But I really hesitate to put that into our statutory interpretation case law. No, I think you should read the statute to say what it says because of the legislative bargain that was struck. This is less, this language is less than all reservists because it does have the... But the theory of Justice Jackson's question was, well, they could have easily said all. And you said, well, they, you know, covered all without advertising it. I think you were saying that. I think that what happened was, I mean, we don't know what happened. That's another point. We don't know what happens. Why are we talking about, you know, speculating about that to such a degree? Well, again, we win on the language of the statute. So, I mean, if we aren't speculating and we're just going to return to ground and go to the language, there's just no way to read this statute in the way that the government wants to read it. Doesn't DURING have, I mean, I appreciate DURING has a temporal meaning, but even in your introduction, you said it virtually always means temporal. Aren't there circumstances in which it could be construed reasonably as a substantive connection? So, to be honest, I have not found a dictionary that says it can have a substantive connection. I think in ordinary usage, we sometimes make a connection. So, you know, if you said the attorney was arguing, you know, during the argument, that that would mean that they were standing at the lectern, that they weren't out in the hall arguing. Right, so it's contextual, isn't it? I mean, don't we have to look at context, especially for a word like DURING, that is so flexible and malleable to try to really understand what this statute is supposed to be covering? I don't think DURING is that flexible. I mean, the court didn't think it was very flexible at all in Rassam where you said that carrying explosive during the commission of any felony means you get a 10-year enhancement. So as long as it was at the same time as, even if the explosives were completely lawful, even if the felony was completely unrelated, you said DURING means at the same time as, and the court was quite clear that that's because DURING really can only carry that meaning. But I'll also point out that I think it's worth going to the actual text of this statute and really looking at it carefully, because it actually cannot bear the construction the government would like to place on it. On page 1A of the blue brief, it says, a call or order to active duty, this is in the first paragraph, under section 12304B of title 10, or a provision of law referred to in section 101A13B. So you have to be called up under a provision of law that is referred to in section 101A13B. So if you then go to 101A13B, which is on page 4A. I mean, can we pause for a second? Because if you're right on your theory, I don't even understand why we're doing that. I mean, if your theory is called up during a national emergency, why is Congress cross-referencing another provision where we have to look to try to figure out whether you're being called up in a certain way? That's the thing that is confusing to me about your argument. So we have really looked into this, and it might be just a quirk of congressional draftsmanship. So this language was enacted as part of the bribery statute, 209, about a month before the language of the federal differential pay statute changed to match this cross-reference language. We've seen this cross-reference in about nine other provisions of the U.S. Code, almost all of them relating to benefits for veterans. And, you know, I don't know why they are making this reference to this particular piece of the contingency operation definition. You know, because maybe they think that if they amend it in that one place, they amend 101A13B, they can get the benefits. I'm sorry, I apologize. So we're referring to 101A13B. So on page 4A of the blue brief, it says in B, it lists a bunch of provisions, and then it says, or any other provision of law during a war or during a national emergency declared by the President or Congress. So there's no reference to the reservist service at all in this lookup operation that we've just done together. If you are looking at 101A13B because you are trying to figure out if differential pay is owed, and the person has been called up under a provision of law and it is during a national emergency, then they are owed differential pay. So in other words, whether they were called up under 12301D is not the question. If you substituted in a national emergency during a national emergency for 12301D, that you would get the same result without looking at whether the reservist was called up to do it. It would just be the provision of law that would be referenced during a national emergency. Whether during can have a substantive component as well as a temporal one. Would it sound natural to you if you had a reservist who temporarily, during a time of national emergency, or let's say war, was working as a recruiter? And so he's working as a recruiter and he's going to high schools and maybe to colleges, too, and just trying to recruit people to sign up. And someone asks that soldier, did you serve during the war? Would it be natural to say yes if you were totally removed from the battlefield, you're working as a recruiter? Well, I think it would, but you don't have to agree with me on that. I actually think it very much would. Like, I served in the armed forces during the war. Oh, well, you were a recruiter. I mean, they might think that you're overstating what you did, but it certainly would be completely natural. And if the person was instead serving to backfill base security so that someone could serve overseas, or otherwise doing something that contributed to the war effort, we usually think that everyone, when a war is declared, is doing something to contribute to the war. What about national emergency? I mean, because that's what's odd. I mean, it's very odd. I agree with you. It's weird to have a superfluity argument when the superfluity is created by a background historical fact rather than the text itself. I agree with you. That's odd. So let's talk about national emergency. If we're looking at during in context, putting aside war, if we think national emergencies are always ongoing, would we say, yes, I served during a national emergency as a recruiter, when other people were, say, down helping people who had been caught in the hurricane? So I don't think you would, actually, but I will say that this statute isn't a conversation between two people. It's sort of a statutory command and a hyper-technical one. I mean, Congress wrote it in a technical manner. And so the question would be, are we going to import that kind of understanding of during into the way that this statute is written, which asks you to look at whether someone has been called up under a provision of law, and it then has you look at a bunch of provisions. So it just doesn't, I mean, I guess the better question under this statute would be, is the statute being used during a national emergency, which it's hard to say that that imports any kind of real world facts. So it's as the statute being used, not as the soldier being used. Exactly. Not as the order, kind of like the Texas amicus brief for the states. Exactly. Yes, I think that they put it extremely well. I think if you want to see this argument made very well, it's in the brief of Texas and the states. I also actually want to point out some things that I think are critical. Congress actually drafts, with respect to national emergencies, in the very way that this statute is drafted, all throughout the United States Code. It's on pages seven to nine of our reply brief. This was just like throwing a penny, like a yard. This was just the ones that came up first in the search. These are all statutory authorities for the executive branch that are activated whenever we are in a time of national emergency. So it does not matter that it's the Iranian sanctions regime. It does not matter. The president just gets these authorities and has them. And the government conceded that one of the more extraordinary authorities in the U.S. Code, public law 85804, which uses the word during, just like this statute, uses during in a purely temporal manner. And that gives the president extraordinary contracting authorities to sort of disregard ordinary contracting rules. So this is how Congress typically drafts statutes with respect to national emergencies, perhaps because they make assumptions about the nationalness and emergency-ness of emergencies that are not founded. I'm not going to hypothesize. But this is how these statutes are written throughout the United States. So do you think those provisions permit the president to do away with all contracting rules for every contract that's totally unrelated to the national emergency? That seems to be your argument. That is the position of both parties in this case, yes, is that that is the scope of the provision. I thought the government had changed its mind. It's going to tell me that because it's going to have to explain why that's true in one set of provisions and not another. So that contracting for paint for the Department of, I don't know, education that has nothing to do with the military, if the government could. I will say that there is a separate limitation then built in the statute. So the statute turns on in time of national emergency. There has to be a determination that it's essential to the national emergency. That's written separately in that statute, as I think my understanding is. Can I go back to how Congress understood this? Because I think a helpful point for you is the CBO score, because Congress does pay attention to that, and that, you say, was based on an understanding that that would apply to everyone called to active duty. So that's a good point in your favor, I think, in my understanding of CBO scores. But the government comes back on that in its brief and, you know, basically says the CBO didn't explain the basis for its assumption, and it was based on prior versions of the legislation. So this is not, you know, not your usual CBO score, which, you know, again, I think is pretty central to how Congress understands legislation. Well, CBO didn't make this mistake. If it's a mistake, CBO didn't make it just one time or just two times. It made it over and over again. And I want to emphasize the degree of error that would be involved here. I've looked at data from the Defense Manpower Data Center, and 90% of call-ups are under unenumerated statutes. So they were off by a factor of 10 if they were estimating this based only on just the prior language of the statute. But we look in our petitioner's brief, we go through and look at other statutes that had the same cross-reference, because, like I said, it's been used in around nine other places for veterans' benefits cases or veterans' benefits, and they always scored it this way. Thank you, Counsel. Justice Thomas, anything further? Justice Alito? What was the CBO score? So the CBO said that it would cost roughly $40 million a year, but that for the average reservist, it would be around $3,000. So the total bill was estimated at $40 million per year? Per year, yes, at that time. What is your response to the government's argument that your client is doomed to lose because he did not present the materials that were required by regulation to the FAA? So I have three responses. It's not a barrier to this Court deciding this case because it's not jurisdictional, so it would just be an issue for remand. And I'll say it's not passed on by the Corporate Law or the MSPB. We have good arguments he was not required to exhaust here, too. One, the statute does not require it. So, you know, the agency in some sense got a benefit here. They didn't have to pay him differential pay in real time. He had to go to the MSPB and get the differential pay, so they can just make the payment then. It's money that was budgeted to be paid to him. It should have been paid. The other is that it would have been futile at the time. So, you know, exhaustion can be excused if it's futile. Here, opium guidance was against him. The consistent practice of the agency was against him, and the person he asked at the agency told him he wouldn't get it. So that was why he didn't make the request. Do I remember correctly that what he did during the time when he was called up was to serve as the captain of a Coast Guard vessel that was escorting military vessels in and out of harbor? Yes. I don't think he was the captain, but he was a petty officer. He was a petty officer on that. Why wouldn't that meet even the Adams standard? I actually think it does meet the Adams standard. This case, for various reasons, the court ruled against us and said there was no evidence he was directly serving in a contingency operation. Adams hadn't been decided when the record closed in this case, so we didn't develop those arguments. And the way this was presented to the Federal Circuit was, you should overrule Adams. He's just entitled to the differential pay, and that's how it was litigated below. At what point do you think the veterans' canon, if it is a proper canon of interpretation, should come into play in this case? Would it come into play only if we thought that the arguments were in equipoise? I have a strong view of the veterans' canon. I think that it is something that's sort of more powerful than that. I think that it is evidence of how Congress thinks about how veterans should be treated based on their service to the country. But certainly, if you get to equipoise, it should be at nominal scale in our favor. The canon is based on the thought that Congress wants any ambiguity that it leaves in the statute that could provide a benefit for veterans, under all circumstances and no matter the cost, to be resolved in favor of the veteran. That is, I guess, about the way Congress thinks. I think you might even elevate it to the level of like a structural constitutional principle. I mean, you know, just as the Court has the federalism clear statement canon, I think, you know, when it comes to veterans and service members, since the very first Congress, there has been an effort to ensure that those who put their lives on the line for us receive compensation. It's constitutionally based? On what provision of the Constitution is it based? Well, I think it's based on the structure of the Constitution, I guess, is the point. What is it about the structure of the Constitution that supports it? Well, there's the fact that most of Article I, Section 8 is devoted to military provisions. I don't think that we have to get into high theory of the veterans canon. But, you know, it is, if you look at the original Constitution, it's primarily a war machine. It's designed to ensure that the country can remain one going forward. And a crucial part of that is ensuring that veterans and reservists receive the benefits. Thank you. Point of clarification, the orders here were a call up for a military contingency. So assuming that your responses to Justice Alito, why your failure to act earlier should have been excused. One of his call ups were for a medical treatment. Under your theory, that plus, I think, regular service, the two weeks that reservists have to train, all of that would be paid to differential pay, correct? Your Honor, his injuries were in the line of duty, and then he was called under 12301H to convalesce. But, you know, he was injured while doing the contingency operation. And, yes, he would receive differential pay for that. And still would he for every reservist for the two weeks of service they render in just basic training? I think that there may be arguments about whether that constitutes a call to active duty under a provision of law. But assuming that it is, yeah, you would receive the pay. Just as you would receive your ordinary pay. Justice Kagan? Justice Gorsuch? You haven't mentioned your argument about the unexpected criminal liability that employers might face. And I just wanted to give you an opportunity to offer that in light of the government's response in its reply brief. Thank you, Your Honor. Yes. So, obviously, Section 209H is a carve-out to a criminal prohibition that says that if you pay differential pay under the exact same terms as this statute, so they have the exact same words, that you are exempt from this criminal statute. So private employers, relying on that language for decades, have been paying those who are activated who work for them differential pay. And the implications of this case are that there are differential pay policies. We did not identify them for obvious reasons that do not match the government's vision of what this statute says. And so they would be out of compliance and have been out of compliance with what the government's version of the scope of this provision is. And so relatively large companies would be retroactively potentially criminally liable as a result of a ruling against us in this case. A quick question. The Adams opinion suggested that somebody called up had to be directly involved in a contingency operation. I don't see either side defending that rule. So should we just vacate and remand on that basis? What would be wrong with that? We welcome the government's decision to sort of abandon the Adams rule. And we do think that no matter what happens, the court would have to vacate. But we think that we are here to get the statute right. We think that Congress enacted a bright-line rule that wasn't designed to create a bunch of line-drawing problems. And we would be down in the Federal Circuit litigating forever. No, I understand that. But normally we don't decide issues in the first instance. And here both sides have presented a raft of arguments that no lower court has passed upon. And normally we wait for circuit splits. Here, of course, we can't get that. But we could at least get the Federal Circuit's considered judgment on your theory and the government's present theory, having rejected the one that nobody seems to be willing to defend. Your Honor, it would be kind of a boon to the government for having kind of moved their position, right? Hey, you don't win everything, but, you know, it's better than a loss. Yes, Your Honor, yes. And we would, of course, accept a vacate and remand if the court is of the mind that this should be passed on by the Federal Circuit first. Justice Kavanaugh? On the criminal liability point, obviously there would be a good mens rea defense, so just point that out. At least for those, you know. Yes, but again. It doesn't defeat your point. I'm just saying retroactive, unknowing liability is something that would be doubly frowned upon. Yes, so if the court is ruling against us, you should say that absolutely. I think that would be a welcome thing. But I would say it is going to be, under the government's theory, very difficult for employers to figure out whether or not their differential pay policies are compliant. The government says just look at their orders, but the orders are written by members of the person's unit. They're written by... Well, the government then adds that, I think this goes to your line drawing point, too, in your opening, that if in a particular instance a serviceman's orders are not clear, he or she can seek to have the orders clarified. And then I guess we would be litigating the very argument that the government has declined to make, which is whether the person's service is going to be sufficiently connected in substance. And again, that gets you to backfilling security operations. That gets you to training to go be deployed. That gets you to all of the line drawing points. Thank you. Thank you, Your Honor. Justice Jackson? Can I just clarify? I'm sorry. So the orders cite to a particular contingency or they don't? They sometimes do and they sometimes don't. They are supposed to, I think. I think the government will come up and say that they are supposed to. They usually just say what provision of law you're being called up under. And if they're silent on that and we were to hold that a substantial connection is required, what's your view on the process then? So my understanding is that the government is saying that orders will then be consistently written in a manner that ensures that a reservist knows whether they are going to get differential pay by looking at the face of their orders. And if it doesn't say, and the reservist... And if that happens, does that defeat your argument about administrability? It does if you think that this will be consistently carried out and that it complies with the statute. The big problem for the government's position is obviously that it doesn't really match up with the statute. There's nothing in the statute's use of during that implies that there's going to be... No, I understand your point. Thank you. Thank you, Your Honor. Thank you, Counsel. Ms. Reeves? Mr. Chief Justice, and may it please the Court. The word during has multiple meanings. And as with many words, the meaning of during in any particular sentence will depend on context. I want to highlight three pieces of context that make clear that during a national emergency means in the course of a national emergency, not at the same time as one. First, the phrase during a national emergency is part of a broadly applicable definition of contingency operation. Petitioner's reading fails to account for the fact that the term generally connotes an operation taken in response to a particular contingency. And national emergencies are often declared for non-military purposes. One that Justice Kavanaugh referred to, for example, is called blocking Iranian government property. It's a prerequisite for certain economic sanctions, and it's been in effect for over 45 years. As a matter of plain language, we would not think that voluntary active-duty training falls under the umbrella of a contingency operation, so long as there is a declared economic emergency. Second, reading during to merely require temporal overlap would make most of Section 101A.13b unnecessary. Because multiple national emergencies are ongoing at all times, petitioner's reading renders the list of expressly cross-referenced provisions and Congress's multiple additions to that list entirely superfluous. And the Court has applied superfluity in cases like this, where superfluity is a result of language in the statute and practical effects of the way the world works. I'd point the Court to TWA v. Andrews as an example of that. And third and finally, petitioner's reading would result in a number of anomalies, including requiring differential pay for reservists who have been court-martialed and incarcerated. For those and other reasons, the context makes clear that deering does not carry a wholly temporal meaning here. Petitioner has consistently failed to seriously engage with the text and context, and neither DOD nor the Coast Guard nor any court has ever adopted petitioner's reading of deering in the definition of contingency operation. This Court should not be the first to do so. I welcome the Court's question. Has your position been adopted before by MSPB or by the Fed Circuit? It has not been adopted by the Federal Circuit. Our position has been adopted by the Federal Circuit. I think the Federal Circuit's position is probably a bit narrower than our position. So we are providing a more benefits-friendly approach. And as far as the MSPB goes, the MSPB as a whole has never issued a precedential decision on this. There's a 2016 decision called Marquise, where the Board as a whole divided on this question. ALJs have come out in different ways. So Petitioner, in his cert stage papers, cited some examples of individual ALJ judges coming out his direction. We looked and there are examples of individual ALJs coming out our direction as well. So there's some degree of novelty to your reading also then? I don't think there's novelty. I think there has been articulations along the lines of what we said by individual ALJ judges. But I think at the end of the day, the main point is that this reading of wholly temporal meaning of dearing that Petitioner has laid out is a really unique reading. But other than a handful of ALJs, it just hasn't been adopted anywhere. How do you respond to Petitioner's point that your reading would expose private employers to more criminal liability? I have four quick responses on that. The first is that our reading is no narrower than the Adams decision. I think it is broader. So assuming companies have been following the prevailing law, I think we're not creating any retroactive liability. Second, the D.C. Circuit has held that there's an intent requirement. It's a decision called the U.S. versus government accountability. I think that would definitely cover the mistaken employer. And third, I don't think this is a situation in which we get into lenity. First of all, because I don't think there's the sort of grievous ambiguity that would lead to lenity itself. But my fourth point is I think it would be an expansion of the lenity doctrine to apply it to a general definitional statute. The court has applied lenity when a statutory prohibition has both civil and criminal penalties. And it's applied it in civil cases for that reason. I'm sorry, Chief. We've had a lot of discussion about what Congress meant, and rightly so. If you were with someone sitting down trying to decide whether to sign up to be a reservist, and you read this provision saying you get the same pay, you know, if you're called up during a war or during a national emergency, and you find out there are 43 or however many it is national emergencies, and that extra pay is very important to me, how do you think a normal person would read that language? I do think the best reading that kind of anyone would have of this language is if you look at all these expressly cross-referenced provisions, and then you look at during a war or during a national emergency, it wouldn't make sense to read that so broadly as to swallow up those other provisions. And I think a reservist wouldn't necessarily think that, oh, if I volunteer for JAG training, that means I'm serving during a national emergency. I don't think that's sort of the way an ordinary person would think of this. Well, you started, I think the first thing you said was, well, if you look at all the cross-referenced provisions, I don't necessarily think somebody trying to decide whether to sign up would do that. I mean, just looking at the language, during a war or during a national emergency, it seems to have a pretty strong temporal aspect. I disagree, and I think, again, I would point the court back to the fact that this is part of the definition of contingency operation, and it applies over 40 places in Title X and over 20 places outside of Title X. And when we think of a contingency operation, we don't normally think of something like volunteering for training. We think of something like an unexpected mission in response to a contingency. So I think if someone read the whole statute and the whole statutory provision, I don't think they would think that this just has a temporal requirement. Well, and you say it doesn't mean during doesn't have a temporal limitation. It also means in the course of. I didn't say I must be missing something because I would have thought in the course of means pretty much the same thing as during. If during has a temporal limitation, I don't see how in the course of wouldn't. So I think in the course of does have a temporal limitation. It just also requires a substantive connection. And I think the plain meaning examples we provide in our brief, someone arguing during a hearing, an obligation to be truthful during an application process, disclosures permitted during or anticipation of a litigation, all of those are requiring both temporal overlap, of course, but also a substantive connection. And that's a very common use of the term during. And I think once you kind of get past that point, the context just makes clear that a substantive connection is required here. Well, I don't, I'm not sure I agree with you that it's a common, to the extent you're saying it's different than in the course of, I'm not sure I understand how it's a very common meaning. I think, will you give me at least the most common reading is that means at the same time as? I'm not sure it's the most common reading, but I think even if you think it's the most common reading, it's wholly temporal, that doesn't excuse the court from having to go through this context sort of analysis. So take the word cool, for example. It means both cold temperature-wise and calm and collected. I think certainly cold temperature-wise is the most common meaning of that term, but that doesn't mean someone reading a sentence puts the thumb on the scale in that favor. Well, it could mean a lot of things. It could also mean, you know, hip. But, I mean, it's not the same kind of word as during. I think it is a similar word to during in that it's a word that has multiple meanings. And when a word has multiple mainline meanings, the court doesn't kind of put a thumb on the scale. It looks at the word in context and tries to sort out what it means and what Congress meant by adopting that word in this context. Ms. Reeves, in response to Justice Thomas' question about the criminal liability under Section 209, I take the mens rea point on past liability, but I think your friend on the other side had a stronger point that I didn't hear you address, and that is private employers will have no way ex ante to know whether they're violating a federal felony, committing a federal felony, because they don't have access to orders all the time. The orders don't contain the information that are necessary to determine whether they should be providing differential pay or whether they're forbidden from doing so. If during has a substantive connection, how is a private employer to figure out whether this fellow with these orders is engaged in conduct during a national emergency? Temporally he can figure that out. It's very difficult to figure out if there's a substantive component that's undefined. So a couple of responses on that, Justice Gorsuch. So first of all, I do think actually it will be fairly straightforward for both agencies and private employers to sort out who's entitled to differential pay. And I do think that that is because the call or order to duty, and we cite Army and Navy and Coast Guard guidance explaining that the call or order to duty is supposed to state the contingency operation, whether it's in support of one, the statutory authority for it, and the basis for the call-up, whether there's an executive order. Now, Petitioner has provided no evidence for his assertion that that commonly does not happen. Well, what do you think? Do you know? Does that commonly happen? You cite regulations, great, but you also want us to take cognizance of the real world and how many national emergencies there are. So perhaps we should ask you, how common is it for the orders not to contain the information that's required to know the answer? So DOD has informed me that it is rare that this guidance is commonplace and that the orders normally contain this sort of language. And as we explained, the way for an individual, whether they're employed by a federal agency or whether they're employed by a private employer, if their orders don't say that, they follow that OPM guidance, they go ask for clarification on the orders from the Army or Navy or whoever they're employed by. And when those are corrected, it is, in fact, clear whether or not they're entitled to differential pay. It's just that a well-meaning private employer could find himself to be a federal felon for actually trying to pay money to somebody. I don't think so because of the mens rea requirement. I understand. I understand. Can I ask you... Sorry, just one last thing. You've acknowledged that this during argument is different than the Adams precedent, and it is, and Justice Thomas also asked you, would it make sense to at least get lower courts to pass on this before we do? We're never going to have a circuit split, but would it be prudent to at least have the benefit of some lower court thinking on what is presented to us for the first time in this court? I think two points on that, Justice Gorsuch. First of all, we don't have a problem with sending this case back. We obviously oppose certiorari in this case. I think the second point I would point out is that in our brief in opposition in Adams, we made essentially the argument we're making to the court now, and we did, in fact, make that to the federal circuit in opposition to petitioner cert petition in this case, and I believe some on the merits of this case. That's interesting that even despite the government's concession that they're wrong, they haven't yet fixed their precedent. So I wonder whether that augurs for doing just that, clarifying that that's wrong. Again, I mean, I think we oppose cert because we think this broad argument that no court has accepted is wrong. You have no objection to this, to vacating and remanding because Adams is wrong? So I think we would have an opposition to vacating here for a couple of reasons, because petitioner this whole way through has presented only one argument. But Adams is wrong. No, my friend, so I think it's important to keep in mind what is wrong in Adams here. What is right in Adams is its rejection of petitioner's argument, that mere temporal overlap entitled someone to differential pay. That is the only argument petitioner has presented throughout this case. He solely took this up to broadly challenge that broad argument in Adams. And so I think a vacater in this case would be inappropriate because that would essentially be giving petitioner a benefit for making a broad argument that this court was unwilling to affirm on. Mrs. Dodd, that he would lose even if we all agree Adams is wrong. I don't think that's right. I think some of the dicta in Adams we aren't embracing here and we've never embraced. We didn't embrace it in our brief in opposition in Adams. We didn't embrace it in our brief in opposition here. But the main line holding he's challenging, we do think it's wrong. I have two lines of questions following up on this. You show the FAA policy to me, but there has no time limit as to when the request for differential pay could be made. So if it has no time limit, why is their failure to have asked for it earlier fatal? So it's not a timing problem here. And the FAA will consider if the court affirms in this case and petitioner actually files a request for differential pay, FAA will consider that under the standard laid out in our brief and we anticipate he will receive differential pay for the three periods at issue in this case. So let me stop and go back to the point that you made earlier where you said he was fighting the Adams decision before the board, which basically made the orders irrelevant. It required him to prove that his work had a substantive connection. You admit that that requirement was not necessary, but why should he be faulted for failing to anticipate a position that the agency rejected? So I don't think that the argument that his orders are in support of a contingency operation or in the course of a contingency operation was in any way foreclosed by Adams. The only thing Adams squarely rejected was that solely temporal overlap alone was not enough. That's not how I read the Federal Circuit's Adams decision. I read it as saying even if your order specified that it was for the Iraqi fight, that you had to prove that the actual job you did related to that contingency operation. I think maybe there's some loose language in Adams along that line, but I wouldn't say it's relevant to the holding of Adams because the facts of Adams... Then we're going to fight about a reading. I think it's fairly clear to me, both in Adams and in this case, that they faulted him for not proving the substantive connection between his work and the Iraqi operation. I do think it's important to keep in mind that the facts in Adams, his orders said he was called up in support of a non-contingency operation. Adams was very different. I agree. Now, there is one other area that I wanted to... I noticed before the Federal Circuit, you argued that the enumerated provisions in 10 U.S.C. 101A.13b should inform the court's understanding of the final clause we're interpreting here. You seem to be making that argument at the bench before us earlier. But in your briefing, you gave it up. But if I look at those cross-references, all of the enumerated contingency operations, some of them require a connection, substantive connection. Some don't. So what's your position? Either all of them require a substantive connection, or they don't. And if they don't, why do we use them to inform us about whether this requires a substantive connection or not? So we haven't made the argument here before this court that all of those cross-reference provisions require a substantive connection. The argument that I was making and that we did make in our brief is that the court should consider the fact that it's defining contingency operation and the plain meaning of that term. That seems like having your cake and eating it, too. You want to say in this one provision, it requires a substantive connection, but it doesn't in all those others. It might not in all those others. And the reason it might not in all those others is because all those others don't mention that connection. I don't think that's right. And again, we haven't made that argument for a reason. But I think if you're trying to make a little sense of how Congress might have been thinking and what it wanted to accomplish by writing things this way, all the expressly cross-referenced provisions provide a basis for involuntary calls to service. And I think it would be rational for Congress to say, well, we want all involuntary service calls of any type to entitle individuals to differential pay. And volunteering for service in the course of a national emergency should entitle them to differential pay. But volunteering for active duty training, to go to JAG school or something like that, does not automatically entitle someone to differential pay. I do think that's kind of a logical way to draw things. So 10 U.S.C. 1230-02 that provides that in time of national emergency to activate a unit of the ready reserve without their consent, does that require there to be a national emergency related to a national emergency? No, I don't believe so. All right. So you are inconsistent there. No, I don't think we're being inconsistent. I know you're saying you're not, but I don't see how I can get to substantive if you say that Congress intended there to be a substantive connection here. But only as to the other provisions of law that weren't expressly enumerated. Congress obviously made different policy judgments as to all involuntary call-ups that are covered under those other provisions. Can I ask about the CBO scoring? The CBO scoring really does seem to assume the petitioner's position here, and I'm wondering how you think that came to be or how we should think about the relevance of that. I have three points on that, Justice Kagan. First, the language originated in CBO reports that were analyzing materially different statutory proposals that suggested that all active duty service would be covered. And second, when that statutory text changed, the CBO reports didn't analyze that. They just carried over the analysis from those prior reports. So my understanding of the way CBO usually works, and you tell me if you think it's different in this situation, but that there's a back and forth and maybe a continuing dialogue, really, between CBO staffers and legislators because it's in everybody's interest that the scoring actually reflect the nature of the thing that Congress wants to do. So I guess I would be surprised if you were to tell me there was an initial thing that they based this assumption on and then everybody just stopped talking to each other. Well, I think one thing to look at is that these reports were very quick succession and that change occurred, and I believe the next report came out within a matter of one or two months. So I'm not sure that there was sort of the time and analysis that one might expect for that changed kind of statutory text. But the third point I wanted to make... Sorry to interrupt, but Justice Kagan suggested that all sides have an interest in making sure the score is accurate. I wonder whether there's actually an incentive to make sure the score is as low as possible and that if there was a change during the drafting process that was material and people thought it would reduce the score, they would have had every incentive to note that. I really can't speculate on what this particular CBO office or the senators and representatives that were speaking to them were thinking about. But the third point I want to make, and I think this is very important, is that even under petitioner's reading, those later CBO reports got it wrong. So one of the other changes that happened was referencing the definition of active duty service in Section 101C, and that excludes full-time National Guard duty. And if you look at those CBO reports, they all say that full-time National Guard duty will be covered. And I don't think the petitioner would dispute that, but it's yet another way... If you go with petitioner's reading, the CBO reports got one big thing wrong. If you go with our reading, it got two big things wrong. I just don't think this is a situation in which the CBO reports should play any sort of major influence in overriding the best meaning of the congressional text. The overall amount of money at issue here is roughly? Unfortunately, I don't have any numbers on that. Because each civilian employing agency is responsible for paying differential pay, we don't have consolidated data on that. I guess my point is it's not a huge number in the grand scheme of the federal budget, correct? I think that that's probably fair, but that doesn't... You don't know? I don't know. I think you said something earlier that's important, just to make sure I have it right. Even if we affirm petitioner could present the orders or go back to the FAA and make the request and would likely, I think you said, I don't want to put words in your mouth, get the differential pay for the pay periods in question, correct? That's correct. The FAA, if he submits his earning and leave statements, which, again, he's never done, put out 32A, and his orders to the FAA, they'll adjudicate it under the standard laid out or briefed. So even affirming, absent something unexpected, he's going to get his pay? That's correct, yes. Okay. Let's see. Footnote 4, you say you're going to change the OPM, or not you, OPM's going to change its guidance going forward. Can you just clarify what you mean by that? I think you've already explained it, but I just want to nail it down in connection with footnote 4. Of course. So I think if the court were to affirm here and just reject the petitioner's argument, OPM would update its guidance to be in line with the standards we've laid out in our brief. So to instruct agencies to look at the text of the orders. If there's confusion about that, to go back to the Navy or Army or Coast Guard and request clarification from them. The guidance will, of course, make clear that this final clause in Section 108A.13b is going to be based on the text of those orders. And so I think it will be very clear from that guidance the rule that agencies should apply when adjudicating differential pay requests. Last one. I'm sorry, go ahead. Well, if it's your last one. Pressure. Can you explain, and I think you've touched on this, but explain how adopting petitioner's interpretation would cause ripple effect problems in other areas of the law? Because I want to make sure I understand how the interlocking pieces work here. So I think our real point is that the term contingency operation is used in numerous places throughout the U.S. Code. Over 50 times in Title X, over 20 times outside of Title X, either contingency operation or one of the provisions within that definition are referenced. And our real argument here is that it wouldn't make any sense to use petitioner's definition of dearing in all of those sorts of contexts. So I think we've pointed out some of them on our brief on pages 5 and 22. And a lot of these fall into the categories of exceptions to various obligations such as spending limits and use of certain resources and requirements to notify Congress. I think if you accepted petitioner's reading, then it would suggest that these requirements have very little teeth because they would essentially be excused as long as a national emergency happens to be ongoing at the same period of time. I understood your discussion with Justice Kavanaugh. You said that the petitioner here would be entitled to get the relief he's seeking. How? So he would need to, again, because petitioner has never actually submitted his earnings and leave statements, there's no way for the FAA to calculate any differential pay to which he's entitled. It's not as if every civilian agency has access to DOD pay stubs. They're separate pay systems and they can't acquire it. So you're just talking about him in this particular case. Yes, I was talking about that. Due to that particular nuance. I thought you were offering broader relief than that. No, I was just talking about petitioner. Okay. I understand the oddity of having all these statutes enumerated if petitioner's position is right as to the catch-all. But you don't think that it's odd to have the policy that petitioner is suggesting, do you? No, I don't think our argument is ultimately a policy argument at all. I think it's based on the text and context here. I guess what I'm suggesting is it would make perfect sense for Congress to say something like anybody who's called up in these perilous times ought to get a pay differential because everybody contributes in their own way. So regardless if you're at the front fighting for a war or you're the military recruiter or you're anything else, that everybody contributes to the effort that is needed in these emergency times. That would make perfect sense for Congress to think, wouldn't it? Yes, I think it would make sense. I just want to point out that I think petitioner's argument actually goes broader than that because he's arguing that individuals who volunteer for training are also entitled to differential pay. I don't think those sort of individuals would kind of fall within that logic. I don't really know why. We need people who get training so that they can step up when their turn comes. Maybe that would apply for involuntary training, but I'm less sure if it would apply to voluntary training. But I don't want to fight you that Congress could have made a very different policy choice here, but the easy way to do so would have just been to say all active duty service and adopt one of the other provisions it considered before adopting this cross-reference to contingency operation. Mr. Reeves, can you address the state's amicus brief where they say that you're pegging this to the orders rather than the statutory authorization when the statute doesn't say that it depends on the way that DOD writes the orders? So I actually think the orders language is in the statutory text, both in 5538 and 101A13B. So obviously if you start with 5538, it's someone who's performing active duty in the uniformed services pursuant to a call or order to active duty, and then it goes through the statutory bases for that. And then similarly in 101A13B, it again results in a call or order to or retention on active duty of members. I think another way to think about this is to try to insert it into the question presented. So I don't think the question presented makes sense if you ask whether a call or order to duty is at the same time as or in the course of a war or national emergency. I don't think it makes sense if you ask whether a provision of law is at the same time as or in the course of a national emergency. Do orders change in the midst of service? So an individual might receive a different set of orders. So I think what usually happens is the orders is for a particular period of time. And then they might, when the orders are set to expire, they might decide to volunteer for more duty in which the orders would be changed, say their initial duty was involuntary, or the agency, or the, excuse me, DOD, might decide to continue them on involuntary service. But at the end of the day, the basis for orders are, first, the statutory authority that DOD has and the facts of a particular mission. But does DOD switch them? I guess what I'm getting at is even if they started out doing something that doesn't fit your conception of a connection to the national emergency, does DOD switch what they're doing midstream and then how is the agency supposed to know or a private employer supposed to know? Oh, now actually they've shifted and they're doing something more closely connected. So yes, in that sort of situation, if someone was not working in support of a contingency operation and then that changed, DOD would write them a new set of orders and then the individual would, just as with any other differential pay request, need to submit those orders and just leave an earning statement to an agency. And that invariably happens? That's my understanding, that that is what is required to happen. The reason we cage this a little bit in our brief is because occasionally mistakes do happen. And DOD does not execute all orders with perfection. But again, Petitioner hasn't identified any situations, let alone any broad issues with orders being miswritten. And we do have this option for individuals to seek clarification if there is a mistake. And I think that guidance would obviously apply if there's a change in orders such as you've articulated. There are going to be difficult line drawing problems under your approach, isn't it? I mean, let's say you're dealing with an air traffic controller and it's not involving, in the course of, this doesn't do it for me, but it's not involving a particular emergency at that time. But in the back of the Army or Air Force's mind is, you know, we want to have a trained cadre of reservists who are used to dealing with the military operations and air traffic controlling. And as long as he's here or she's there, it'll help us to have that background. I mean, would that be in the course of whatever national emergency would be invoked later on? I think it would depend on how DOD chose to write the orders in that situation. Again, DOD can't call someone out without a statutory basis for that, and it has to abide by limits that Congress has placed on it. And DOD isn't writing these orders, you know, focused on what the differential pay effects is going to be. It's focused on the needs that it has, whether that's training needs, whether that's service needs. And so DOD writes the orders accordingly, and they are going to say whether or not it's a contingency operation and whether or not it's in support of an executive order that's involved in a national emergency. So I think it is going to be clear, generally, whether someone's entitled to differential pay. Thank you. Justice Thomas? Justice O'Connor? Can I just ask, having the differential pay scenario turn on the order, that doesn't seem so odd to me, but can you just speak to that? I mean, it seems like what the statute contemplated, right? I mean, in response to the Chief Justice's question, you have to look at what the person is being called up relative to, and if the order says that, is it the government's position that that's all that's necessary? That is, and I think you're completely right that there is a textual hook for that, both in Section 5538 and in Section 101A.13b. Both refer to the call or order to active duty, and I do think that that really gives us a textual basis. Was that the government's position before on this? In other words, I'm wondering whether the OPM scoring debacle could be related to a lack of clarity as to how we would figure out substantive connection without this kind of clear guidance. I'm genuinely not sure what OPM was thinking about. I can't say that in the legislative history that I've looked at for Section 5538 there was discussion or that much focus on the orders, but obviously the relevant legislative history, if this Court were to look at it, which we don't think it should, is Section 101A.13b. Thank you. Rebuttal, Mr. Tutte? Thank you, Mr. Chief Justice. First, I want to say that the government has abandoned the Adams rule. The Adams rule couldn't be clearer. It was applied twice in this case. It says you have to be directly called into a contingency operation in order to receive differential pay. Our client was not called directly into a contingency operation. His orders say he was in support of a contingency operation, so he was not eligible for differential pay under Adams. So the government's concession finally came at the 11th hour, at the merit stage in this Court. So if you are inclined to rule against us, you should at least vacate and allow the Federal Circuit to get it right. But we think that the correct reading of this statute is clear. Mr. Chief Justice, you understand our reading absolutely. If an ordinary person read this statute, they would think, I get differential pay as long as I'm called to active duty under a provision of law during a national emergency. There are 43 national emergencies. I get differential pay. Most of them are looking at one national emergency, one extremely important national emergency, the 9-11 emergency that continues to this day, that has been the basis for so many deployments overseas. It triggered calls to active duty minutes after the planes struck the towers on September 11th. And individuals were not just called to go serve in Afghanistan and Iraq. They were called to protect airports. They were called to fill in numerous security functions to ensure that there was not a repeat of the attacks shortly after they happened. I want to talk about ripple effects because I feel like it is a real sticking point. The government admits that the enumerated provisions don't require a substantive connection between the emergency and the service. So in other words, like my client, you could be called up under 12-302 orders. He was called to protect the Port of Charleston under 12-302 orders. The government is claiming that that made protecting the Port of Charleston a contingency operation. Obviously, they don't treat it that way. It is not going to have these ripple effects because lots of people, almost all throughout the military services, individuals are called to active duty under enumerated provisions not related to a pending national emergency. They are not transforming everything the military does into contingency operations. So this ripple effect idea is something that is in the air, but it doesn't have practical effects with how the government is actually treating contingency operations on the ground. I also want to point out, I looked at all of the contingency operations statutes and the parade of horribles is not actually that horrible. It mostly pertains to benefits for individuals and it pertains to procedures that agencies have to follow and then a few extra additional powers that the agencies have that they typically have with respect to responding to important national events. I want to talk about the adjust and generous argument because I think that it reveals the hollowness of the government's position. The government contended in Adams that all of the call-ups have some relationship to the national emergency. They've given that up because they do not and so they can't inform the scope of the catch-all provision. To Justice Jackson's point, Justice Jackson pointed out that you think that it's very simple, you just look at the order, you look at the provision of law under which the person is called. But if you look at the provision of law that a person is called under, like 12301D orders, our reading is that if it's during a national emergency, that means you get differential pay. The government is saying you have to have something additional in that order. You have to have some reference to the national emergency and that reference to the national emergency is not something that they have to put in. They're supposed to say whether your service is connected to a contingency operation under their regulations. Again, these orders are written by junior enlisted people. They're not issued by the Pentagon. They do not typically change while a person is serving. So, in other words, if you are stationed somewhere and it suddenly becomes a combat zone, you are apparently not going to get differential pay. And I want to say that people are called to respond to national emergencies all the time. 9-11 was a good example. There are people that are not military or fundamentally military in nature, but they should still get differential pay because they're serving on active duty, sometimes under enumerated provisions. So, for instance, responding to the COVID-19 emergency. Reservists were activated to respond to that emergency. It's not a fundamentally military emergency. So, again, I don't think that the government takes the position that it was a contingency operation. So, the idea that this creates sweeping, sort of ripple effects throughout the United States code or that our reading is so implausible, I don't agree with. I just want to close by saying that it obviously is good policy. It obviously is defensible policy. No one at any point in the enactment of this statute presented it as anything other than applying to all reservists. We urge you to reverse. Thank you, Mr. Chief Justice. Thank you, counsel. The case is submitted.